This is a nuisance case involving a commercial chicken farming operation and a neighboring landowner.
The plaintiffs, Joe Dean Swedenberg and his wife Marie R. Swedenberg, appeal from a judgment based upon a jury verdict in favor of the defendant, David Phillips. We reverse and remand.
The issues are (I) whether the trial court erred in not charging the jury on the plaintiffs' *Page 171 
right to recover for an injury to land; (II) whether the evidence supported the charge to the jury that the defendant's chicken farm could not become a nuisance "by any change in conditions in and about the locality thereof"; (III) whether the trial court erred in charging the jury that the defendant "cannot be liable to the plaintiffs for nuisance unless [the defendant] was guilty of negligence"; and (IV) whether the trial court erred by admitting the defendant's photographs of the plaintiffs' property into evidence.
The Swedenbergs owned 2.9 acres of land in Pickens County abutting Phillips's 20 acres. They established their residence in a mobile home on the property in December 1976. The Swedenbergs cleared the land; planted vegetable gardens, fruit trees, and pine trees; dug a grease pit and built a shed; and dug two wells themselves and had a third well drilled. The Swedenbergs' son also resided on the property in a second mobile home. Both mobile homes were located close to the boundary of Phillips's property.
Phillips moved onto his 20 acres in May 1976 and, in 1978, built his first chicken house, which was 528 feet long and 40 feet wide and housed 23,000 to 32,000 chickens. A second chicken house was built in 1984; three more chicken houses were built in 1985. Phillips disposed of dead chickens in a pit (2 feet wide by 18 feet long and 15 feet deep), which was dug in his pasture between his chicken houses and the Swedenberg property. The pit was covered with wood and a layer of dirt, and was accessible through three lid-covered openings. Phillips cleaned his chicken houses approximately every 18 months and spread the chicken litter on his pasture with a motorized spreader that throws the litter from the rear of his tractor. Spreading dry chicken litter creates a lot of dust, and wet chicken litter produces a strong odor, similar to ammonia.
In September 1985, the pit collapsed while Phillips was out of town. As a result of the collapse, an offensive odor emanated from the pit, and the Swedenbergs complained to Phillips and the county health department. Mr. Swedenberg tried to cover the pit with some pieces of tin to stop the odor. Phillips had the pit filled in late December 1985. The Swedenbergs also complained about the dust caused by Phillips's spreading of the chicken litter and complained of the odor of the litter when it became wet.
Phillips complained to the Swedenbergs that their children were harming his chickens by driving on his property and slinging gravel onto the roofs of his chicken houses. The county health department had also received complaints about the Swedenbergs concerning alleged violations of sewage disposal regulations on their property.
The Swedenbergs sued Phillips[1] on February 28, 1986, and alleged that Phillips's chicken houses were located in close proximity to their home and the home of their son and that the "stench and odor" from the "chicken waste," including but not limited to dead chickens, were injurious to their health. The Swedenbergs claimed that their property was damaged as a result of Phillips's actions, specifically that it had been made unmarketable or less valuable. They claimed damages for mental pain and anguish and later amended their complaint to include a claim for punitive damages.
Allegedly because of the activities of Phillips, the Swedenbergs moved away from their land in the spring of 1986 and sold their mobile home for $1000. Their son moved his mobile home off the property in 1987, and the land remained unoccupied thereafter. They now use the property to store used refrigerators and scrap metal.
 ISSUE I.
At trial, Mrs. Swedenberg testified that they had paid $9,394, including interest, for their mobile home and had sold it for $1000; that they had paid $4,000 for *Page 172 
the 2.9 acres of land; and that they had paid $1,650 to have the third well drilled. She testified concerning other improvements that they had made to the property, and stated that "it was worth a lot to me because I loved that place down there." She said that they could live on their property if the chicken houses were not there. Mrs. Swedenberg did not specifically testify as to the value of their property before the alleged nuisance, or as to its value afterwards. However, Phillips testified that he had considered the Swedenbergs' property to be worth $2,500 six months before trial, at a time when he had been interested in buying it; that was several months after the Swedenbergs had abandoned their land because of the alleged nuisance.
In its charge to the jury, the trial court instructed the jury, "[Y]ou should not consider any evidence relating to the value of the property and . . . you should confine your consideration of damages to the other elements of damages that have been pointed out to you by the court." The Swedenbergs objected to this instruction, arguing that they had "proved damages to the home and to real property and the court refused to charge the jury that [they] could recover for damages to real estate or damages to [their] property." On appeal, the Swedenbergs argue that the trial court erred by not charging the jury on their right to recover for an injury to their land. We agree.
In a continuing nuisance case involving injury to real property caused by noxious odors, the measure of damages for injury to the real property is the difference in the value of the real property with and without such odors. Baldwin v.McClendon, 292 Ala. 43, 51, 288 So.2d 761 (1974). "The jury's assessment of damages cannot be based on speculation or conjecture." McLendon Pools, Inc. v. Bush, 414 So.2d 92, 94
(Ala.Civ.App. 1982). Reviewing the testimony in this case, we find that there was sufficient evidence for the trial court to charge the jury concerning damages to the Swedenbergs' property.
 ISSUES II III.
The trial court charged the jury, in part, on the law of nuisance as follows:
 "Now, under the law of Alabama, no agricultural or any farming operation facility or the operation thereof shall be or become a nuisance, private or public, by any change in conditions in and about the locality thereof after the same has been in operation for more than one year when such plant, facility, or establishment or the operation thereof was not a nuisance at the time the operation began provided that the provisions of this section shall not apply whenever a nuisance results from the negligent or improper operation of such plant or establishment or any farming operation or facility.
 "I charge you that the defendant, David Phillips, in this case cannot be liable to the plaintiffs for nuisance unless David Phillips was guilty of negligence. . . .
". . . .
 "In the case of an agricultural or farming operation, if such operation has been in existence for a year and was not a nuisance at the time it was created then it does not become a nuisance simply because of the change in locality around it.
If you are reasonably satisfied that these are the facts in this case, then the plaintiff is not entitled to recover against the defendant, David Phillips, without further proof by the plaintiff to your reasonable satisfaction of negligence on the part of the defendant, David Phillips, which proximately caused damage to the plaintiff."
(Emphasis added.)
It appears that the trial judge was attempting to apply Code 1975, § 6-5-127(a). The instruction on nuisance quoted above paraphrases that section. However, we cannot ascertain from the record how the facts of this case would have called for the application of that statute. It seems clear that any change in the surrounding locality that may have made this agricultural operation a nuisance — i.e., the plaintiffs' coming to the land next door — did not occur after the operation began; it is clear that *Page 173 
the plaintiffs were residing on their property before the operation began. Thus, the statutory exception relating to nuisances caused by negligence has no application in this case, and therefore, the trial court erred by applying § 6-5-127(a). Furthermore, there was no evidence that there had been a "change in conditions in and about the locality." Therefore, the trial court also erred by instructing the jury to that effect.
"[L]iability for nuisance does not depend upon the question of negligence, and may exist although there is no negligence. . . . However, a nuisance may be and frequently is the consequence of negligence, or the same acts or omissions which constitute negligence may give rise to a nuisance." Terrell v.Alabama Water Service Co., 245 Ala. 68, 70, 15 So.2d 727, 729
(1943). Applying this rule, we conclude that the trial court's instructions to the jury, as to negligence, supra, were erroneous.
 ISSUE IV.
At trial, the Swedenbergs moved to strike defendant's exhibits 8 through 21, which were admitted into evidence over their objection. These exhibits consisted of several photographs of the Swedenbergs' property and were offered by Phillips to show the market value of the Swedenbergs' property as it existed after the creation of the alleged nuisance. The photographs depicted the property in a serious state of dilapidation. Phillips testified that the photographs were taken as the Swedenbergs "were taking things down and leaving" and that "part of it is still like it is"; that the property was "growed up a lot worse and they've got a lot of refrigerators and old stuff piled down next to my fence, and . . . [o]ther than that, all this garbage is still here;" that he did not know when the trailer was there; and that he had "no idea" when the photographs were taken. The Swedenbergs argued to the trial court that the photographs had no probative value as to the value of their land because Phillips did not testify as to when the photographs were taken or as to whether he recognized them and whether the photographs reasonably and accurately depicted the condition of the property. Mrs. Swedenberg testified that the photographs depicted their property at a time "right after" they moved out of the trailer. She also testified that at the time of trial the property did not look like it looked in the photographs because, she said, they had "sold the trailer" and the place had been "cleaned up." The trial court denied the Swedenbergs' motion to strike the photographs, and the jury was allowed to consider them.
We note that "[a] picture is not admissible unless a witness testified that the picture as exhibited accurately reproduces the objects or actions which he observed" and, furthermore, that
 "the determination as to the sufficiency of the preliminary proofs offered to identify the photographs or to show that it is an accurate representation of the objects which it purports to portray is a matter within the sound discretion of the trial court and will not be reviewable except for gross abuse."
Osborn v. Brown, 361 So.2d 82, 86 (Ala. 1978). (Citations omitted.)
Applying these principles, we conclude that there was not sufficient testimony to authenticate the photographs as reasonably and accurately depicting the Swedenbergs' property as it existed after the occurrence of the alleged nuisance and that without such testimony the trial court abused its discretion in admitting the photographs into evidence.
Therefore, the judgment is due to be, and it is hereby, reversed, and the cause is remanded for a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.
[1] Hickman Hatchery, Inc. ("Hickman"), was also named as a defendant. Hickman supplied Phillips with young chickens, feed, etc., and regulated Phillips's chicken farming operation. The Swedenbergs settled their claim against Hickman. *Page 174